*Board of Public Works, et al. v. K. Hovnanian's Four Seasons at Kent Island, LLC*, No. 57, September Term 2014, Opinion by Greene, J.

**ADMINISTRATIVE LAW – EXHAUSTION OF ADMINISTRATIVE REMEDIES AND FINAL JUDGMENT**

Absent a specific legislative grant of review authority or immediate and irreparable harmful legal consequences, a party must exhaust all exclusive administrative remedies and await a final administrative decision before filing suit in the circuit court to challenge an action by an administrative agency. In this case, Hovnanian's allegation that the Board applied an "unauthorized procedure" does not fall under the recognized exceptions to the finality doctrine.

**ADMINISTRATIVE LAW – JUDICIAL REVIEW – MANDAMUS**

In order for mandamus to lie for the courts to review a discretionary action of an administrative agency, there must be both no adequate administrative remedy and an alleged illegal, arbitrary, or capricious action. In this case, mandamus is improper where Hovnanian challenges an action that is within the discretion of the Board and an adequate remedy exists to challenge the Board's actions on judicial review following a final administrative decision.

IN THE COURT OF APPEALS
OF MARYLAND

No. 57

September Term, 2014

_____

BOARD OF PUBLIC WORKS, et al.,

v.

K. HOVNANIAN'S FOUR SEASONS AT
KENT ISLAND, LLC

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
Watts
Rodowsky, Lawrence F. (Retired,
Specially Assigned),

JJ.

_____

Opinion by Greene, J.

_____

Filed: June 3, 2015

This is the fourth time this Court has dealt with proceedings surrounding the development project spearheaded by K. Hovnanian's Four Seasons at Kent Island, LLC ("Appellee" or "Hovnanian").[1] At issue in the underlying administrative proceedings is a State wetlands license. Although we previously addressed the merits of the Board of Public Works's ("Appellant" or "the Board") review of Hovnanian's application for a State wetlands license, see *Maryland Board of Public Works v. K. Hovnanian's Four Seasons at Kent Island, LLC*, 425 Md. 482, 42 A.3d 40 (2012) ("*Hovnanian I*"), the issue presently before us is procedural. Hovnanian initiated this latest litigation by filing a complaint for declaratory and injunctive relief and for a writ of mandamus against the Board, seeking an order compelling the Board to vote promptly on Hovnanian's long-outstanding application for a State wetlands permit following delays resulting from a perceived conflict of interest involving a Board employee. On Hovnanian's motion for summary judgment, the Circuit Court for Queen Anne's County granted the relief requested by Hovnanian and ordered the Board to hold a final vote on the application, notwithstanding any perceived appearance of impropriety. The Board noted an appeal to the Court of Special Appeals. Prior to any proceedings in that court, we granted the Board's petition for certiorari to consider the following questions:

> I. Was Hovnanian required to await a final administrative decision and exhaust statutory administrative remedies before bringing an action for

---

[1] The previous cases are: *Maryland Bd. of Public Works v. K. Hovnanian's Four Seasons at Kent Island*, 425 Md. 482, 42 A.3d 40 (2012); *Foley v. K. Hovnanian at Kent Island, LLC*, 410 Md. 128, 978 A.2d 222 (2009); and *Queen Anne's Conservation, Inc. v. County Comm'rs*, 382 Md. 306, 855 A.2d 325 (2004).

mandamus, injunction, and declaratory judgment to challenge the administrative procedure adopted to evaluate Hovnanian's application for a State wetlands license?

II. Did the trial court err in substituting its judgment for that of the Board with respect to remediating the Wetlands Administrator's conflict of interest, which involved a previously undisclosed relationship with one of Hovnanian's attorneys and his law firm?

III. Did the trial court err in entering a writ of mandamus directing the Board to issue a decision on Hovnanian's application for a State wetlands license by October 6, 2014, confining the facts that the Board may consider to those contained in that portion of the administrative record that existed on July 24, 2013, and limiting what the Board may consider in any future action on the project?

We shall vacate the judgment of the Circuit Court for Queen Anne's County and hold that the Circuit Court's order was improper (1) for want of a prior final administrative decision; and (2) because mandamus is unavailable under these circumstances. Accordingly, we need not and do not address the remaining questions which relate to the appearance of a conflict of interest and limitations on the Board's consideration of the administrative record.

## FACTUAL AND PROCEDURAL HISTORY

The development project underlying these proceedings has been in the works for nearly two decades. The project involves the construction of a mixed-use adult community on Kent Island in Queen Anne's County known as Four Seasons at Kent Island ("the project"). As described in our 2012 decision, "the project envisions 1,350 single and multifamily dwelling units, an assisted living facility, and related community and recreational facilities, to be erected on two tracts comprising 562 acres that lie on the north side of U.S.

2

Route 50 between the towns of Chester and Stevensville." *Hovnanian I*, 425 Md. at 495, 42 A.3d at 47. As a result of the location's proximity to several bodies of tidal water as well as the Chesapeake Bay Critical Area,[2] Hovnanian was required to obtain numerous permits and approvals from state and local agencies. Despite significant opposition, administrative appeals, and several lawsuits over the years since the inception of this project, Hovnanian has obtained all of the necessary permits and approvals, except one. *Hovnanian I*, 425 Md. at 495, 42 A.3d at 47.

The final outstanding permit application, at issue in these proceedings, is Hovnanian's application for a State wetlands license pursuant to Maryland Code (1982, 2014 Repl. Vol.), § 16-202 of the Environment Article ("Env."). Under the statute, the authority to grant licenses for the "dredging" or "filling" of State-owned wetlands rests with the Board, which is comprised of three members: the Governor, the State Comptroller, and the State Treasurer. In relevant part, Env. § 16-202(g)(1) provides that "the Board shall decide if issuance of the license is in the best interest of the State, taking into account the varying ecological, economic, developmental, recreational, and aesthetic values each application presents." As we stated previously, "under Env. § 16-202, the Board possesses a great deal of largely unguided discretion in determining whether to issue a license and on what terms and conditions[.]" *Hovnanian I*, 425 Md. at 515, 42 A.3d at 59.

___

[2] For definitions and the laws governing the Chesapeake Bay Critical Area, see Maryland Code (1973, 2012 Repl. Vol.), title 8, subtitle 18 of the Natural Resources Article.

Briefly, the State wetlands license application process typically begins with a review by the Maryland Department of the Environment ("the Department" or "DOE"), and terminates with the Board's decision following receipt of a report and recommendation from the Department.[3] The Board also employs a Wetlands Administrator, who evaluates the Department's report and makes an independent recommendation to the Board. *See* COMAR 23.02.04.08. In deciding whether to grant a license, the Board has broad discretion to consider the reports and recommendations of both the Department and the Wetlands

_____

[3] In our 2012 opinion, we explained the application process and the Department of the Environment's ("DOE") role in that process as follows:

> With exceptions not relevant here, only a person with a riparian interest in upland adjacent to the State wetlands or that person's agent may apply for a license. COMAR 26.24.02.02A. The application is made to DOE, which evaluates it in light of 19 criteria set forth in COMAR 26.24.02.03. Those criteria include, among other things (i) ecological, developmental, recreational, and aesthetic values of tidal wetlands in order to preserve them and prevent their despoliation and loss, (ii) the proprietary interests of the Board over State wetlands, and (iii) the degree to which dredging and filling activities can be avoided or minimized, will alter or destroy tidal wetlands, are consistent with Federal, State, and local land use plans, and will provide facilities for the handling of storm water runoff and sanitary wastes.

> . . . [W]ith respect to its review of an application for a license to dredge or fill State wetlands[,] . . . Env. § 16–202(f) . . . provides that (1) the Secretary shall assist the Board in determining whether to issue a license to dredge or fill State wetlands, and (2) after consultation with interested Federal, State, and local units, the Department shall issue a public notice, hold any requested hearing, take any evidence the Secretary deems advisable, and submit a report indicating whether the license should be granted and, if so what if any terms, conditions, and consideration should be required.

*Hovnanian I*, 425 Md. at 491-92, 42 A.3d at 45.

4

Administrator, as well as public testimony at any hearing and any other information available in the public record.

Hovnanian's wetlands license application originally included four infrastructure development elements: (1) a bridge over Cox Creek; (2) a stormwater management system; (3) utility lines drilled underneath Cox Creek; and (4) a community pier. After conducting an extensive review of the project, both the Department and then-Wetlands Administrator Doldon Moore recommended granting the license. At the Board's May 23, 2007, meeting, however, the Board denied the application, on a two to one vote, based on the majority's view that the environmental impact of the project as a whole was too great and not in the best interest of the State.

Thereafter, Hovnanian filed in the Circuit Court for Queen Anne's County a petition for judicial review of the Board's denial of the application. The Circuit Court reversed the Board's decision, "conclud[ing] that the Board did err, by basing its decision on considerations outside the lawful scope of its discretion," to wit, the entirety of the proposed project, rather than just the four infrastructure elements forming the application. *Hovnanian I*, 425 Md. at 485, 42 A.3d at 41. The Board appealed and we granted *certiorari* prior to any significant proceedings in the Court of Special Appeals. *Id.* We agreed with the Circuit Court and held that the Board applied an incorrect legal standard by considering the broader environmental impact of the project as a whole, where the statutes and regulations governing wetlands permits confine the Board's review to the impacts on State wetlands. *Hovnanian*

5

*I*, 425 Md. at 517-19, 42 A.3d at 60-61.  In other words, the Board's focus was too broad.

We explained:

> [I]n deciding whether to issue a wetlands license, the Board does not act—is not authorized to act—as a super land use authority.  Its own regulation, COMAR 23.02.04.10, limits its focus to considering the recommendations of DOE and the Wetlands Administrator and taking into account the ecological, economic, developmental, recreational, and aesthetic values 'to preserve the wetlands and prevent their despoliation and destruction,' not to determine whether the project as a whole is environmentally sound at its particular location.  That authority lies elsewhere.

> The decision to allow a development to proceed within the Chesapeake Bay or Atlantic Coastal Bays Critical Area is specifically committed by law to the jurisdiction of the affected counties and the Critical Area Commission for the Chesapeake and Atlantic Coastal Bays, created by Md. Code, § 8-1803 of the Natural Resources Article . . . .

> * * * *

> The language of Env. § 16-202(c)(1) [now § 16-202(g)(1)] cannot reasonably be read to broaden the jurisdiction of the Board in such a manner as to trump the clear commitment of land use policy to the local governments and, in part, to the Critical Area Commission and other State agencies.  The requirement that the Board consider the ecological, economic, developmental, recreational, and aesthetic values presented in the application in determining whether issuance of the license is in the State's interest has reference to the impact of the proposed dredging or filling on the affected wetlands.  Section 16-102(b), which declares the public policy behind the Wetlands Law, makes abundantly clear that those considerations are tied to the desire 'to preserve the wetlands and prevent their despoliation and destruction,' not to control all development near the Chesapeake Bay, and the Board's own regulation confirms that narrower focus.

*Hovnanian I*, 425 Md. at 517-19, 42 A.3d at 60-61.  What the Board should have considered, and indeed was required to consider, we stated, "was whether the impact on the affected wetlands of the four elements that comprised the application was sufficiently adverse as to

6

make it in the State's interest to deny the application." *Hovnanian I*, 425 Md. at 521, 42 A.3d at 63.

Accordingly, this Court remanded the case to the Circuit Court for Queen Anne's County with directions to remand the case to the Board for further proceedings. We explained that "[i]n this case, that would be for the Board to consider whether, applying the considerations set forth in Env. § 16-202(g)(1) and its own regulations, as construed in [the] Opinion, issuance of the license is in the State's interest." *Hovnanian I*, 425 Md. at 522, 42 A.3d at 63. The Circuit Court for Queen Anne's County remanded the case to the Board on June 15, 2012.

Following the remand, Hovnanian advised the Board that it intended to submit a revised application and asked the Board to delay review until those changes were made. According to its brief, Hovnanian reviewed each of the elements included in the original application for impacts on tidal wetlands and concluded that only the bridge over Cox Creek and the stormwater discharge outfall impacted the wetlands. Cognizant of the substantial opposition posed by the Board, Hovnanian then decided to remove and/or redesign the problematic elements before submitting its amended application.

Hovnanian submitted a revised application in May 2013, approximately one year after the date of this Court's opinion in *Hovnanian I*. The May 2013 application listed only two of the original elements: the drilled sewer line and the community pier. Effectively, Hovnanian withdrew the bridge, drilled water line, and stormwater management system

7

elements from the original permit application. The scope and extent of the two remaining elements (the sewer line and pier) did not differ from the original application. In addition, Hovnanian represented to the Board that it would eliminate a portion of the proposed residential project ("Phase V"), and convey the parcel of land where Phase V would have been located (the "Tanner Parcel") to Queen Anne's County for use as an ecopark. The removal of Phase V explained the removal of the bridge from the license application because the bridge would have been necessary to reach the Tanner Parcel.

Upon receipt of the revised application, the Board adopted an expedited review process under which Mr. Moore would submit a supplement to his 2007 report.[4] The Department would then review Mr. Moore's report and issue comments. The Board scheduled a hearing on Hovnanian's application for its July 24, 2013, meeting. In the meantime, on May 23, 2013, members of the Department, Mr. Moore, and Hovnanian's stormwater management engineer conducted a site visit to review the re-engineered

---

[4] In its brief, the Board states, "there was no clear precedent for how the Board should proceed in the unfamiliar territory of processing a wetlands license application that had been remanded to the Board from the Court of Appeals and after which the applicant had made substantial changes to the project." The Board also stated that "[s]ome members of the public believed that the best approach would be to send the application back to the very beginning of the regulatory process and request a full report and recommendation from the Department of the Environment or, at least, delay review until the Queen Anne's County government had issued further building permits." In response to concerns of this nature at the Board meeting, Adam Snyder, Assistant Attorney General of Maryland, noted that "it's not something that would be compelled by regulation . . . to start [at] square one to give everyone an opportunity to provide input on a changed project because the project ha[d] really been shrunk . . . rather than changed."

stormwater facilities. During the visit, Department members suggested additional changes to the system, which Hovnanian agreed to make.[5] Prior to the hearing, Mr. Moore issued his supplemental report and the Department filed comments on that report to the Board. Both Mr. Moore and the Department recommended approval of the license as presented in the revised application.

The Board held a hearing on Hovnanian's revised wetlands license application on July 24, 2013. At the hearing, the Board members discussed at length this Court's 2012 opinion, and heard explanations of the legal standard to be applied by the Board, as interpreted by this Court,[6] from attorneys from the Office of the Attorney General. Accordingly, then-Governor Martin O'Malley encouraged everyone at the hearing to address their remarks to the impacts on State wetlands.

Mr. Moore, as Wetlands Administrator, and Dr. Robert Summers, as Deputy Secretary of the Department of the Environment, testified regarding the proposed development's impacts on State wetlands. Mr. Moore commented on the reduced scope of the project, and stated his conclusion that the remaining two elements included in the application would

---

[5] In its brief, Hovnanian points out that the Department noted, in its comments based on Mr. Moore's supplemental report, that "the revised project . . . eliminates several stormwater management outfalls and moves the remaining stormwater management outfalls away from tidal wetlands."

[6] We note for purposes of clarity that, as we reiterated *supra* in this Opinion, the "legal standard" to be applied by the Board "was whether the impact on the affected wetlands of the four elements that comprised the application was sufficiently adverse as to make it in the State's interest to deny the application." *Hovnanian I*, 425 Md. at 521, 42 A.3d at 63.

9

"have no impact whatsoever to wetlands." Similarly, Dr. Summers testified that following the full review in 2007 the Department had determined that the project met all regulatory requirements, and that by the time of the 2013 hearing, Hovnanian had "come back with a project that actually eliminated the wetlands impacts." Dr. Summers stated in conclusion that the Department "recommend[ed] that [the project] can proceed, that it actually reduces the damages or the impacts that we had said previously had been properly mitigated and could be controlled."

The major topic of discussion at the hearing was the change in scope of the application and the project—namely, the removal of elements from the application, as well as the elimination of Phase V and the proposed transfer of the Tanner Parcel to Queen Anne's County. Charles Schaller, one of Hovnanian's attorneys, advocated on behalf of Hovnanian at the meeting and described the proposed changes to the project as a "win-win situation for everybody." Mr. Schaller explained that Hovnanian had reduced the density of the project, had removed some of the concerning stormwater drainage features, and was "committed to achieving environmental site design to the maximum extent practicable." In addition, Mr. Schaller explained that Hovnanian was in negotiations with Queen Anne's County for implementation of the transfer of the Tanner Parcel to the County for recreational uses. The Board took issue with the fact that the property transfer was not yet complete, and questioned Mr. Schaller about what "guarantees" the Board had that the property would not be developed later, thereby requiring a bridge over Cox Creek, etc., at some point in the

10

future.

Ultimately, the Board deferred a vote on Hovnanian's application to provide "ample time" to "figure out better assurances" that the Tanner Parcel would be conveyed to the County for an ecopark or other non-private development use. The Queen Anne's County Commissioners did not vote on the necessary agreement for the property transfer until October 8, 2013. Hovnanian and the County thereafter entered into a contract for the conveyance of the property, which included terms that incorporated the "assurances" required by the Board. Although the next scheduled Board meeting occurred on October 16, 2013, the Board did not include Hovnanian's wetlands license application on the meeting agenda.

Around October 23, 2013, the Board learned that Mr. Moore had a previously undisclosed relationship with Mr. Schaller and Mr. Schaller's law firm, which the Board viewed as a potential conflict of interest or, at least, an appearance of a conflict of interest. Mr. Moore first contacted the Board's General Counsel on October 22, 2013, to discuss an ethical concern based upon his appointment and service since August 23, 2010, with Mr. Schaller as co-trustee of Mr. Moore's brother-in-law's testamentary trust.[7] In addition, Mr. Schaller's law firm had previously served as Mr. Moore's family lawyers. Board Counsel referred Mr. Moore to the State Ethics Commission. After a meeting with the Ethics Commission, Mr. Moore informed Sheila McDonald, the Board Secretary, that he must

---

[7] Hovnanian points out that, notably, the trusteeship appointment came some three years *after* the initial review of Hovnanian's application had been completed in May 2007.

11

recuse himself from any duties as Wetlands Administrator involving Mr. Schaller and his law firm, including the Hovnanian application. Around October 23, 2013, Ms. McDonald informed the Board members about Mr. Moore's actions vis à vis his potential conflict of interest. Concluding that this prior relationship between Mr. Moore and Mr. Schaller created, at least, an appearance of impropriety, the Board placed Hovnanian's application on hold while it determined how best to protect the integrity of the administrative record. On November 8, 2013, Ms. McDonald informed Hovnanian that the application would not be placed on the Board's agenda until the Board "evaluated the record before the Board in light of that relationship and had undertaken appropriate measures, if any, resulting from that evaluation." Mr. Moore retired ultimately from his position as Wetlands Administrator.

The Board adopted an "expedited approach" in order to, in its words, "cur[e] any possible appearance of impropriety and ensur[e] that the Board could vote on a clean record, free from any ethical taint." The Board anticipated that this process would take 60 to 90 days. On December 13, 2013, the Board informed Hovnanian by letter of its plan to review and ensure the integrity of the record following the apparent conflict of interest. In particular, the Board proposed that it would (1) strike from consideration Mr. Moore's 2013 supplemental report; (2) require the Department to initiate a new review of the application and render an additional report; and (3) retain two independent environmental experts/professors from the University of Maryland to "stand in the shoes" of the Wetlands Administrator and conduct a review of the application and prepare a report of their findings.

12

In addition to the two elements listed in the application, the Board requested the Department and the independent environmental experts to consider whether Hovnanian's proposed revised stormwater management system required a wetlands license. The Board also determined to strike the Department's comments to Mr. Moore's 2013 supplemental report. Meanwhile, the Board had not yet hired a new Wetlands Administrator.[8]

On December 20, 2013, Hovnanian objected to the Board's proposal and requested the Board to schedule a vote on the application based on the existing administrative record. On January 3, 2014, Ms. McDonald advised Hovnanian that the Board had not offered "any feedback that would cause [her] to change the course set forth in [the] December 13, 2013 letter."

On January 13, 2014, Hovnanian filed its current Complaint for Declaratory and Injunctive Relief and for a Writ of Mandamus in the Circuit Court for Queen Anne's County. Through its Complaint, Hovnanian sought an order to compel the Board to review Hovnanian's revised application and to vote on the application based on the existing administrative record without further delay. Hovnanian also sought a preliminary injunction to halt the application review process ordered by the Board and the Board's proposed plan to certify the integrity of the administrative record. The Board voluntarily agreed to do so, and Hovnanian withdrew its motion for preliminary injunction. As a result, all proceedings

---

[8] The Board apparently hired a new Wetlands Administrator in July 2014, after this action had commenced. No further review of Hovnanian's application has taken place, however, pending a final resolution of this litigation, as agreed to by the parties.

13

before the Board regarding Hovnanian's application, including the conflict of interest "remediation plan," were suspended pending the conclusion of the action in the Circuit Court.

In its Complaint, Hovnanian asserted that the Circuit Court had jurisdiction over the matter, and that Hovnanian was not required to exhaust administrative remedies because the Board required Hovnanian to follow an "unauthorized procedural framework significantly at variance with applicable statutory and regulatory standards." The Board moved to dismiss the Complaint on several grounds, including failure to exhaust administrative remedies, arguing that Hovnanian could challenge the Board's allegedly illegal procedures via judicial review following a final administrative decision. The Circuit Court dismissed Hovnanian's claim for declaratory relief, but denied the Board's motion as to Hovnanian's other claims. Following discovery, both Hovnanian and the Board filed motions for summary judgment.

Following a hearing on July 7, 2014, the Circuit Court for Queen Anne's County granted summary judgment in favor of Hovnanian. The Circuit Court concluded that the Board had acted beyond its authority by deferring its vote on Hovnanian's application, and that any further attempt by Hovnanian to advance its application would be "an exercise in futility." The Circuit Court further concluded that, "[e]ven through the lens of extreme deference . . . upon applying the reasonable person standard, no appearance of impropriety existed[,]" based on the facts that: (1) Mr. Moore made the disclosure; (2) Mr. Moore's relationship to Mr. Schaller had no connection to the application process; (3) the 2013 report

14

is the same as the 2007 report; (4) MDE members accompanied Mr. Moore during his 2013 site visit; and (5) there existed no evidence of improper actions. Finally, the Circuit Court decided that the only thing left for the Board to do was to take a vote—a "mere[] execution of a task" (i.e., a ministerial function)—and, therefore, a writ of mandamus was properly within the court's authority to issue. Thus, the Circuit Court ordered the Board to vote on Hovnanian's application on or before Monday, October 6, 2014, and ordered the Board to limit its consideration to the impact to State tidal wetlands from the proposed sewer line under Cox Creek and the ten slip community marina, noting that "the issue of stormwater outflows, similar to the fate of the Tanner Parcel, is beyond the present authority of the [Board]."[9]

On August 4, 2014, the Board noted a timely appeal to the Court of Special Appeals. Prior to any meaningful proceedings in that court, the Board filed a petition for certiorari to this Court, as well as a motion to stay the judgment of the Circuit Court. We granted both requests. *Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island*, 439 Md. 694, 98 A.3d 233 (2014).

## DISCUSSION

This Court reviews a circuit court's grant of summary judgment for legal correctness under a non-deferential standard of review. *State Ctr. LLC v. Lexington Charles Ltd. P'ship*,

---

[9] As noted previously, we do not address the merits in this proceeding because the Circuit Court's conclusions on the merits were premature in the absence of a final administrative decision.

438 Md. 451, 497, 92 A.3d 400, 427 (2014).  In its Order in the instant case, the Circuit Court for Queen Anne's County characterized this action as a challenge to the Board's "failure to act" and concluded that, therefore, Hovnanian's action for mandamus was properly before the court despite the lack of a final administrative decision.  Before beginning our analysis, we note that although the Circuit Court characterized this as a "failure to act" case, the parties agree that Hovnanian's claims have centered on a challenge to the *legality* of the Board's actions—namely, the process for remediating a perceived conflict of interest, which Hovnanian refers to as an "unauthorized procedural framework." Moreover, both parties agree that there has been no final administrative decision and that, once such a decision is made, the decision would be subject to judicial review pursuant to Env. § 16-204.

Hovnanian argues that the Circuit Court properly ruled in this case because there exists an "unauthorized procedures" exception to the exhaustion rule, which applies when a complainant challenges an agency's use of unauthorized or illegal procedures.  In addition, Hovnanian contends that the court has authority to hear this case under the "mandate rule," *i.e.*, the inherent authority of the court to enforce its orders.  The Board asserts that this action is premature and improper for two reasons: first, Hovnanian failed to await a final administrative decision, and, second, mandamus does not lie under these circumstances.

### Finality and Exhaustion

It is a basic tenet of administrative law that "[w]here an administrative agency has

16

primary or exclusive jurisdiction over a controversy, the parties to the controversy must

ordinarily await a final administrative decision before resorting to the courts for resolution

of the controversy." *State v. Maryland State Bd. of Contract Appeals*, 364 Md. 446, 457, 773

A.2d 504, 510 (2001). "To be 'final,' the order or decision must dispose of the case by

deciding all question of law and fact and leave nothing further for the administrative body

to decide." *Willis v. Montgomery Cnty.*, 415 Md. 523, 535, 3 A.3d 448, 455-56 (2010). In

addition, a claimant must exhaust all administrative remedies prior to bringing a challenge

in court to an agency action. *See Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 76, 825 A.2d

388, 397 (2003) ("Another principle of administrative law, which is related to and somewhat

overlaps the finality principle, is the requirement that administrative remedies must be

exhausted before bringing an action in court."). The doctrines of exhaustion and finality are

"overlapping" principles in that, "[i]f there is no final administrative decision in a case before

an administrative agency, there is ordinarily no exhaustion of the administrative remedy."

*Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 485, 27 A.3d 143, 149 (2011).

The doctrines of exhaustion and finality "share the common goal of preventing

potentially unnecessary and premature disruption by the courts of the activities of

administrative agencies." *Maryland Comm'n on Human Relations v. Downey Commc'ns,

Inc.*, 110 Md. App. 493, 528, 678 A.2d 55, 72 (1996). We have explained:

> The rule requiring exhaustion of administrative or statutory remedies is
> supported by sound reasoning. The decisions of an administrative agency are
> often of a discretionary nature, and frequently require an expertise which the
> agency can bring to bear in sifting the information presented to it. The agency

17

should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed.

*Soley v. State Comm'n on Human Relations*, 277 Md. 521, 526, 356 A.2d 254, 257 (1976).

"We have recognized a few limited exceptions to the exhaustion requirement, the principal one being an action challenging the validity of a legislative enactment on its face." *Maryland Comm'n on Human Relations v. Mass Transit Admin.*, 294 Md. 225, 232, 449 A.2d 385, 388 (1982). Hovnanian asserts that one such exception is the "unauthorized procedures" exception, which, Hovnanian contends, this Court announced in *Prince George's County v. Blumberg*, 288 Md. 275, 418 A.2d 1155 (1980). In that case, the plaintiff builders obtained building and water-sewer permits from Prince George's County and the Washington Suburban Sanitary Commission (WSSC) to build two high rise residential buildings. *Blumberg*, 288 Md. at 278, 418 A.2d at 1157. Shortly before construction commenced, however, the builders learned that the County was considering a revocation of the permit, based on a newly enacted county law, requiring that a building permit issue only to a licensed building contractor. *Blumberg*, 288 Md. at 279, 418 A.2d at 1158. The builders' permit application was filed before the effective date of the new ordinance and did not list a licensed building contractor. *Id.* The permit was issued after the new law came into effect, however. *Id.* Construction commenced, but shortly thereafter the

18

County issued a stop work order because the previously issued building permit was invalid for failing to list a licensed contractor. *Blumberg*, 288 Md. at 280, 418 A.2d at 1158. The WSSC subsequently revoked its permits as well. *Id.* The builders filed suit against the County and the WSSC in the Circuit Court for Prince George's County. *Blumberg*, 288 Md. at 281, 418 A.2d at 1159. The trial court found for the builders, and ordered the County and the WSSC to reissue the permits and to pay compensatory damages. *Blumberg*, 288 Md. at 282, 418 A.2d at 1159-60. The Court of Special Appeals affirmed. *Id.*

Before this Court, the County argued that the court lacked jurisdiction to hear the case because the builders had failed to exhaust all administrative remedies. *Blumberg*, 288 Md. at 283, 418 A.2d at 1160. In addressing that issue, we recognized that:

> [T]here are exceptions to the administrative agency exhaustion rule . . . . Among them are:
>
> 1. When the legislative body has indicated an intention that exhaustion of administrative remedies was not a precondition to the institution of normal judicial action. *White v. Prince George's Co.*, 282 Md. 641, 649, 387 A.2d 260, 265 (1978).
>
> 2. When there is a direct attack, constitutional or otherwise, upon the power or authority (including whether it was validly enacted) of the legislative body to pass the legislation from which relief is sought, as contrasted with a constitutional or other type issue that goes to the application of a general statute to a particular situation. *Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 308, 407 A.2d 738, 741 (1979).
>
> 3. **When an agency requires a party to follow, in a manner and to a degree that is significant, an unauthorized procedure.** *Stark v. Board of Registration*, 179 Md. 276, 284-85, 19 A.2d 716, 720 (1941).
>
> 4. Where the administrative agency cannot provide to any substantial degree

a remedy. *Poe v. Baltimore City*, 241 Md. 303, 308-09, 216 A.2d 707, 709 (1966).

5. When the object of, as well as the issues presented by, a judicial proceeding only tangentially or incidentally concern matters which the administrative agency was legislatively created to solve, and do not, in any meaningful way, call for or involve applications of its expertise. *Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Area*, 282 Md. 588, 594-604, 386 A.2d 1216, 1222-27 (1978).

*Blumberg*, 288 Md. at 284-85, 418 A.2d at 1161 (emphasis added). At issue in that case was the fourth exception, "no substantial remedy available." This Court held that there was an available remedy: the builders could have sought an appeal to the Board of Appeals, and thereafter could have sought judicial review of the Board's decision. *Blumberg*, 288 Md. at 290-91, 418 A.2d at 1164. Therefore, the trial court should have dismissed the lawsuit because the builders failed to exhaust their administrative remedies. *Blumberg*, 288 Md. at 293, 418 A.2d at 1165.

Hovnanian relies on the third exception listed in *Blumberg*, *supra*, to argue that the exhaustion rule does not apply when the plaintiff is challenging the agency's use of unauthorized or illegal procedures. That exception was not at issue or discussed in *Blumberg*, however, and Hovnanian points to no case where this Court has in fact applied any such exception. Indeed, three years after *Blumberg*, we noted that the "unauthorized procedure" exception is dicta in *Blumberg* and had previously been disavowed. We explained that in *Soley v. State of Maryland Comm'n on Human Relations*, decided prior to *Blumberg*, we had disavowed the dicta in *Stark*, cited in *Blumberg* for the "unauthorized procedure" exception, "stating that [the exception] had been 'deprived of any vitality it may

20

have possessed by the subsequent adoption of the Administrative Procedure Act,' that provides for judicial review of final agency decisions that are alleged to be the result of . . . an 'unlawful procedure.'" *Maryland Comm'n on Human Relations v. Bethlehem Steel Corp.*, 295 Md. 586, 594 n.10, 457 A.2d 1146, 1150 n.10 (1983) (quoting *Soley v. State of Maryland Comm'n on Human Relations*, 277 Md. 521, 528, 356 A.2d 254, 258 (1976)). Hovnanian points out that the instant proceedings before the Board do not constitute a "contested case hearing" and, therefore, are not governed by the Administrative Procedure Act (APA). As such, Hovnanian argues, the "unauthorized procedure" exception remains viable in agency proceedings not governed by the APA. The Board, to the contrary, argues that the "unauthorized procedure" exception is not viable after the passage of the APA anyway because it has now been "encompasse[d] . . . within the scope of judicial review." *Soley*, 277 Md. at 528, 356 A.2d at 258. We agree with the Board that, in this context, whether a matter is a "contested case" and subject to the APA for purposes of judicial review is a distinction without a difference. We explained as much in *Harvey v. Marshall*:

> Although we are cognizant that the particular situation presented in this case . . . was not a "contested case" at the time it was considered by the agency and therefore the APA does not apply, Maryland cases suggest that "an administrative proceeding, even if not subject to judicial review under the APA, would be subject to judicial review, of essentially the same scope, in an action for mandamus, certiorari, injunction or declaratory judgment . . . ." *Med. Waste Assocs. v. Maryland Waste Coalition,* 327 Md. 596, 610, 612 A.2d 241, 248 (1992)[.]

389 Md. 243, 296, 884 A.2d 1171, 1203 (2005). Accordingly, we decline to draw a distinction between APA vs. non-APA judicial review cases for the purposes of exceptions

to the principles of exhaustion and finality.

We addressed exceptions to the finality requirement more recently in *Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 27 A.3d 143 (2011). In that case, a developer sought approval of a mixed-use site development plan from the Howard County Planning Board. *Renaissance Centro*, 421 Md. at 477, 27 A.3d at 144-45. Despite public opposition to the development, the Planning Board approved the site development plan. *Id.* The opponents appealed the decision of the Planning Board pursuant to the Howard County Code. *Renaissance Centro*, 421 Md. at 477, 27 A.3d at 145. Their appeal was heard, first, by an administrative hearing examiner, and, subsequently, by the Howard County Board of Appeals. *Renaissance Centro*, 421 Md. at 477-78, 27 A.3d at 145. During the administrative appeal, the developer argued that the opponents lacked standing to challenge the decision of the Planning Board. *Id.* Following a hearing, the Howard County Board of Appeals held a vote, which resulted in a two to two tie. *Renaissance Centro*, 421 Md. at 478-79, 27 A.3d at 145. Shortly thereafter, two new members were confirmed to be appointed to the Board of Appeals, and the Board of Appeals informed the parties that it would reconvene and hold a new vote on the matter with the new Board of Appeals. *Renaissance Centro*, 421 Md. at 479, 27 A.3d at 146. Both parties objected to the new procedure, and the developer filed suit in the Circuit Court for Howard County, challenging as illegal the Howard County Board of Appeals's decision to hold a re-vote. *Renaissance Centro*, 421 Md. at 479-80, 27 A.3d at 146.

On review by this Court, we held that the Board of Appeals's decision to hold a re-vote was not a final administrative decision. *Renaissance Centro*, 421 Md. at 490-91, 27 A.3d at 152-53. Therefore, the declaratory judgment action should have been dismissed because the developer failed to exhaust administrative remedies and await a final administrative decision. *Renaissance Centro*, 421 Md. at 491, 27 A.3d at 153. We explained:

> [T]his Court has consistently held that, in the absence of a statutory provision expressly authorizing judicial review of interlocutory administrative decisions, and in the absence of an interlocutory administrative decision with immediate legal consequences causing irreparable harm, 'the parties to the controversy must ordinarily await a *final administrative decision* before resorting to the courts.' *State v. State Board of Contract Appeals,* 364 Md. 446, 457, 773 A.2d 504, 510 (2001) (emphasis added).

*Renaissance Centro*, 421 Md. at 485, 27 A.3d at 149 (quoting *Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 74-75, 825 A.2d 388, 397 (2003)). Therefore, we stated, "apart from the two exceptions delineated in the above quotation, a final administrative decision is a prerequisite for 'resorting to the courts,' *i.e.*, for a court to consider and decide the merits or other issues in a case like the present one." *Renaissance Centro*, *id.* In addition, we specifically rejected the developer's argument that the fact "that the Board of Appeals' planned action would be unauthorized and improper [would] excuse or cure the lack of a final administrative decision and the failure to exhaust the administrative remedy." *Renaissance Centro*, 421 Md. at 490, 27 A.3d at 152. Rather, we continued, "[t]he appropriate time to argue that the decision of an administrative agency was not in accordance

23

with law is in a judicial review action, *after* the rendering of a final administrative decision."
*Id.* (emphasis in original).

Accordingly, our decision in *Renaissance Centro* assumes the invalidity of any "unauthorized procedure" exception and is consistent with the rationale underlying the rules of finality and exhaustion. It is well established that "[t]he salutary purpose of the finality requirement is to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions." *Driggs Corp. v. Md. Aviation Admin.*, 348 Md. 389, 407, 704 A.2d 433, 443 (1998). Therefore, absent a specific legislative grant of review authority or immediate and irreparable harmful legal consequences, our administrative law jurisprudence requires a party to exhaust all exclusive administrative remedies and await a final administrative decision before filing suit in the circuit court. Hovnanian has neither argued nor demonstrated that it is entitled to review based on a statute or that it has suffered immediate irreparable harm. Thus, Hovnanian is required to await a final administrative decision by the Board before filing suit to challenge the review procedure applied in this case.[10]

---

[10] As an alternative theory, Hovnanian contends that the court has the authority to hear this case under the "mandate rule." The "mandate rule" is a "subset of the [law of the case] doctrine." *Stokes v. Am. Airlines, Inc.*, 142 Md. App. 440, 446, 790 A.2d 699, 702 (2002) (citing *Tu v. State,* 336 Md. 406, 416, 648 A.2d 993, 998 (1994)). We have explained that "a decision of [this Court] . . . is binding and conclusive upon the parties . . . . [a]nd it is obvious that if the order departs from the mandate either by allowing more or less than contained in its terms, it is illegal and subject to review by this Court." *Chayt v. Bd. of Zoning Appeals of Baltimore City*, 178 Md. 400, 403, 13 A.2d 614, 615 (1940) (citation
(continued...)

## Mandamus[11]

The Board further asserts that this case should be dismissed because mandamus does not lie under these circumstances.

> It is well established that common law mandamus is 'an extraordinary remedy' that 'is generally used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which the party applying for the writ has a clear legal right. The writ ordinarily does not lie where the action to be reviewed is discretionary or depends on personal judgment.'

*Falls Rd. Cmty. Ass'n, Inc. v. Baltimore Cnty.*, 437 Md. 115, 139, 85 A.3d 185, 199 (2014) (quoting *Goodwich v. Nolan,* 343 Md. 130, 145, 680 A.2d 1040, 1047 (1996)). In the rare case where mandamus is appropriate to review a discretionary agency action, we have made

---

(...continued)
omitted). Where relevant, this principle applies equally to administrative agencies as a result of a remand following judicial review. *See Atlantic City Elec. Co. v. Fed. Energy Regulatory Comm'n*, 329 F.3d 856, 858 (D.C. Cir. 2003) ("[The] [c]ourt has the power to enforce its mandates, including the power to 'correct any misconception of its mandate by a[n] . . . administrative agency subject to its authority.'"); *City of Cleveland v. Federal Power Comm'n*, 561 F.2d 344, 346 (D.C. Cir. 1977) ("[The Commission] is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the] court . . . , and [the court] is amply armed to rectify any deviation through the process of mandamus."). Essentially, Hovnanian asserts that the Board has failed to comply with this Court's 2012 mandate, which constitutes part of the "law of the case." Under the circumstances, however, we do not address that issue until a final decision is made by the Board, or until Hovnanian can establish one of the exceptions to the finality requirement described in *Renaissance Centro, supra*.

[11] For clarity, we note that this case involves common law mandamus. "Common law mandamus is to be distinguished from administrative mandamus, a remedy that allows for judicial review of certain quasi-judicial administrative decisions when judicial review is not otherwise expressly provided by law." *Falls Rd. Cmty. Ass'n, Inc. v. Baltimore Cnty.*, 437 Md. 115, 139 n.26, 85 A.3d 185, 199 n.26 (2014).

clear that "there must be both a lack of an available procedure for obtaining review *and* an allegation that the action complained of is illegal, arbitrary, capricious or unreasonable." *Goodwich*, 343 Md. at 146, 680 A.2d at 1048. *See also Brack v. Wells*, 184 Md. 86, 90, 40 A.2d 319, 321 (1944) ("Unless [the agency's] discretion is grossly abused or such duty compelled by statute or there is a clear showing that such duty exists, mandamus will not lie.").

Hovnanian argues that the Board imposed unauthorized procedures on Hovnanian that are illegal, arbitrary, and unreasonable. In particular, Hovnanian contends that the Board's actions are inconsistent with Title 16 and the applicable regulations governing wetlands license applications. To the contrary, the Board contends that the "conflict remediation" procedures adopted by the Board do not conflict with any statute or regulation, and do not constitute an unreasonable exercise of its discretion. In any event, the Board continues, Hovnanian has an adequate avenue for obtaining review by means of an action for judicial review following a final administrative decision on the application.

We agree with the Board. As stated above, the wetlands license application process is a matter over which the Board exercises broad discretion. *See Hovnanian I*, 425 Md. at 515, 42 A.3d at 59 (stating that "the Board possesses a great deal of largely unguided discretion in determining whether to issue a [State wetlands] license and on what terms and conditions"). Therefore, in order for mandamus to lie, there must be both no adequate remedy and an alleged illegal, arbitrary, or capricious action. Here, Hovnanian has an

26

available remedy: await a final decision by the Board and then seek judicial review in the circuit court. Therefore, mandamus is improper under the circumstances of this case. Moreover, we note, without deciding, that an agency like the Board, under similar circumstances, must retain some discretion to cure an appearance of impropriety.[12] In addition, based on our review of the record, we agree with the Board's assertion that "there was no significant period of unexplained delay, and there is no evidence that the Board was 'deliberately dragging its feet'" which might require judicial intervention. *See Harvey*, 389 Md. at 276, 884 A.2d at 1191 (noting that "a court's inherent power of judicial review, under appropriate circumstances, may reach an administrative agency's inaction as well as its action"); *A. H. Smith Sand & Gravel Co. v. Dep't of Water Res.*, 270 Md. 652, 661, 313 A.2d 820, 826 (1974) (implying that mandamus may be available when an agency "unduly delays processing an application").[13]

## Conclusion

In conclusion, we vacate the order of the Circuit Court for Queen Anne's County for two reasons. First, Hovnanian's lawsuit was premature due to the failure to exhaust administrative remedies and await a final administrative decision. Second, mandamus was

---

[12] Where there is no clear statute or regulation governing a conflict of interest-type situation, we could not say that an administrative agency would be acting unlawfully or arbitrarily to address an alleged conflict of interest.

[13] Indeed, much of the alleged delay in getting to a final vote on the revised application is self-inflicted by Hovnanian in pursuing this premature litigation. As noted at oral argument in this case, a final vote may have been achieved (with attendant objections on the administrative record for subsequent judicial scrutiny) long before it will now occur.

27

improper, where the issue at hand was a matter of discretion left to the Board, because an adequate remedy existed to challenge the Board's actions on judicial review following a final administrative decision. Accordingly, the Circuit Court should have dismissed the action.

**JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY VACATED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE BOARD OF PUBLIC WORKS FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEE.**