*The Town of Upper Marlboro v. The Prince George's County Council*, No. 55 September 2021 Term.  Opinion by Hotten, J.

**LAND USE – JUDICIAL REVIEW – FINAL AGENCY ACTIONS**

Generally, an agency action is appealable only if it is final.  An agency action is final when it decides all questions of law and fact and leaves nothing further for the agency to decide. *Willis v. Montgomery Cty.*, 415 Md. 523, 534–35, 3 A.3d 448, 455–56 (2010).  Prince George's County Council ("the Council") passed a resolution, CR-72-2019, to consider whether to amend the *2010 Prince George's County Historic Sites and Districts Plan* by removing the historic designation of two schoolhouses in Upper Marlboro, Maryland.  Following a public hearing, the Council passed a second resolution, CR-98-2019, that accordingly amended the *2010 Prince George's County Historic Sites and Districts Plan*.  The Court of Appeals held that CR-72-2019 was not a final agency action because it merely initiated the process for determining whether to remove the historic designation of the two schoolhouses, leaving the final decision to be determined by a subsequent resolution and subject to the input and comment from the public.

**LAND USE – MINOR AMENDMENTS TO AN APPROVED ZONING PLAN – SCOPE AND PURPOSE**

The standard of review for an agency action, such as the passage of a resolution by the Council, depends on whether the agency acted in a legislative or quasi-judicial capacity. As a threshold issue, the Court determined that the Council acted in a legislative capacity in the passage of both CR-72-2019 and CR-98-2019 because the Council acted in its discretion and on public policy grounds.

Judicial review of legislative actions is generally "limited to assessing whether the agency was acting within its legal boundaries[.] . . ." *Bucktail, LLC v. Cty. Council of Talbot Cty*., 352 Md. 530, 543, 723 A.2d 440, 446 (1999) (citation omitted).  Resolutions by the Council that affect land use and zoning must comply with the procedural requirements pursuant to Prince George's County Code ("PGCC") § 27-642.  An initiating resolution, such as CR-72-2019, "shall set forth the purpose and scope of the proposed amendment[.] . . ."  PGCC § 27-642(d).  The Court held that the Council acted within the legal boundaries of PGCC § 27-642 by specifying that the scope and purpose of CR-72-2019 was limited to the "public planning objective" of redesignating the historical status of two schoolhouses.  The resolution did not exceed the legal boundaries of the statute by not providing further detail on the future uses of the two schoolhouses.

Circuit Court for Prince George's County
Case No. CAL 19-40094
Argued: May 10, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 55

September Term, 2021

_____

THE TOWN OF UPPER MARLBORO

v.

THE PRINCE GEORGE'S COUNTY
COUNCIL

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Eaves,
Adkins, Sally D.,
 (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.

_____

Filed:  August 1,  2022

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Respondent, Prince George's County Council (the "Council" or "District Council"),[1] sought to remove two historic schoolhouses in Upper Marlboro, Maryland from the *2010 Prince George's County Historic Sites and Districts Plan*. Pursuant to the procedures outlined in the Prince George's County Code, on July 23, 2019, the Council passed an initiating resolution, CR-72-2019. This resolution directed the Prince George's County Planning Board of the Maryland-National Capital Park and Planning Commission (the "Planning Board") to initiate the process for considering whether to adopt a minor amendment that would remove the two schoolhouses from the County's list of historically protected sites (the "minor amendment"). Pursuant to the resolution, a joint public hearing was held on the proposed minor amendment, during which representatives of the Town of Upper Marlboro (the "Town"), Petitioner, argued against its adoption. The Town, however, did not seek judicial review of CR-72-2019 itself.

The Council ultimately adopted the minor amendment through a subsequent resolution, CR-98-2019, on November 19, 2019. Within thirty days, the Town filed a petition for judicial review of CR-98-2019 in the Circuit Court for Prince George's County. The Town asserted that CR-72-2019 did not properly set forth the purpose and scope of the proposed minor amendment as statutorily required. Therefore, according to the Town, the adoption of the minor amendment in CR-98-2019 was arbitrary and capricious. The

---

[1] "In situations involving zoning actions entirely within Prince George's County, the County Council of Prince George's County sits as the District Council." *Grant v. Cty. Council of Prince George's Cty.*, 465 Md. 496, 503, 214 A.3d 1098, 1102 (2019) (citing Md. Code Ann., Land Use ("Land Use") § 22-101(b)).

circuit court ruled against the Town, finding that the adoption of CR-72-2019 and CR-98-2019 was not arbitrary and capricious, and was supported by substantial evidence in the record.

The Town subsequently appealed to the Court of Special Appeals, which affirmed the circuit court on different grounds. The intermediate appellate court determined that CR-72-2019 was an independently reviewable final agency action because it was an "administratively distinct" action by the Council. *Town of Upper Marlboro v. Prince George's Cty. Council*, No. 0801, Sept. Term, 2020, 2021 WL 4169198, at \*4 (Md. Ct. Spec. App. Sept. 14, 2021). The court found that the Town forfeited its right to directly challenge CR-72-2019 because the Town failed to directly appeal within thirty days of the passage of the resolution. The court declined to reach the merits of whether CR-98-2019 was procedurally deficient because the challenge to CR-98-2019 was "based exclusively on alleged deficiencies with CR-72-2019." *Id.* The court concluded that the Town cannot circumvent the thirty-day appeal window by bringing "an appeal of CR-72-2019 through CR-98-2019." *Id.*

The Town filed a petition for *certiorari*, which we granted. *Town of Upper Marlboro v. Prince George's Cty. Council*, 477 Md. 149, 266 A.3d 990 (2022). It presents the following questions for our review:

> I. Was CR-72-2019 a final appealable decision that had to be challenged within [thirty] days of finality as required by § 22-407 of the Land Use Article?

2

II. Was the Town's appeal of CR[-]98-2019 [in]sufficient to challenge the deficiencies in CR-72-2019?[2]

III. Was the decision of the County Council sitting as the District Council deficient in setting forth the purpose and scope of the minor amendment in the initiating resolution (CR-72-[2019]) as required by Section 27-642 of the Prince George's County Code?

As explained in detail below, we answer each question in the negative. The decision of the Court of Special Appeals is therefore affirmed on alternative grounds.

**FACTUAL AND PROCEDURAL BACKGROUND**

**Relevant Facts**

Old Marlboro Primary School and Old Marlboro High School are properties located in Upper Marlboro, Maryland and owned by Prince George's County.[3] Until the contested actions of the Council, the two schoolhouses were listed on the *2010 Prince George's County Historic Sites and Districts Plan* and protected by the County's historic preservation ordinances. *See* Prince George's County Code ("PGCC") § 29-101, *et seq.* Old Marlboro Primary School is a one-story wood-frame Craftsman-style building

---

[2] For clarity in our response, we have slightly rephrased the second question presented, which originally asked: "Was the Town's appeal of CR[-]98-2019 sufficient to challenge the deficiencies in CR-72-2019?"

[3] The two schoolhouses are adjacent to the Dr. William & Sarah Beanes Cemetery, another site listed on the *2010 Prince George's County Historic Sites and Districts Plan*. During the War of 1812, the British army captured Dr. William Beanes, a prominent physician and planter in Prince George's County. Francis Scott Key was sent to Baltimore to negotiate the release of Dr. Beanes. Mr. Key was successful, but was detained during the British navy's bombardment of Fort McHenry in Baltimore. Inspired by the sight of the American flag still flying above Fort McHenry "by the dawn's early light," Mr. Key wrote a poem that became "The Star-Spangled Banner."

constructed in 1896 as a replacement building for an earlier public school built for girls in 1867. The building was converted into a residence in 1921. Old Marlboro High School was constructed in two phases in 1921 and 1934 and built in the Classical Revival-style. The two schoolhouses have been vacant since the early 2000s, and have deteriorated due to disuse and lack of maintenance since their historic designation in 2010.

On July 23, 2019, the Council passed CR-72-2019, "[f]or the purpose of directing the [Planning Board] to initiate a minor amendment to the [*2010*] *Historic Sites and Districts Plan*[.]" The resolution stated:

> WHEREAS, the District Council finds that there is a need to reevaluate the designation of Historic Sites 79-019-51 and 79-019-52 [*i.e.*, Old Marlboro Primary School and Old Marlboro High School] for removal from the [*2010*] *Prince George's County Historic Sites and Districts Plan*; and
>
> WHEREAS, Section 27-642 of the Zoning Ordinance [of the Prince George's County Code] establishes a process whereby the District Council may initiate certain minor amendments to an approved functional master plan; and
>
> WHEREAS, the Council finds that the proposed minor amendment is plainly authorized pursuant to Section 27-642, because the proposed amendment: (1) is limited to specific issues regarding public planning objectives; and (2) does not constitute an amendment which would require major transportation analysis and/or modeling, revised water and sewer classifications, and Adequate Public Facilities analysis; and
>
> WHEREAS, upon approval of this Resolution and, in accordance with applicable law, the proposed minor amendment to the [*2010*] *Prince George's County Historic Sites and Districts Plan* shall be subject to all notice and public hearing requirements to seek public comment on the minor amendment.

The resolution then stated that the Planning Board "is hereby directed to initiate a minor amendment to the [*2010*] *Prince George's County Historic Sites and Districts Plan* . . . to

4

remove the Old Marlboro Primary School . . . and the Old Marlboro High School[.]" The resolution set a joint public hearing on the proposed minor amendment for September 17, 2019.

During the joint public hearing, the Town submitted testimony, a citizen's petition, and a Town Resolution opposing the minor amendment. Following the hearing, the Council and the Planning Board conducted additional public work-sessions on the testimony from the joint public hearing and recommendations regarding the minor amendment.

On November 19, 2019, the Council passed CR-98-2019, which officially adopted the minor amendment removing Old Marlboro Primary School and Old Marlboro High School from the *2010 Prince George's County Historic Sites and Districts Plan*:

> A RESOLUTION concerning [t]he 2010 Historic Sites and Districts Plan for Prince George's County – Minor Amendment . . .
>
> WHEREAS, on July 23, 2019, the District Council adopted CR-72-2019 for the *purpose of initiating* a minor amendment process to amend the [*2010*] *Prince George's County Historic Sites and Districts Plan* to remove the Old Marlboro Primary School (Historic Site 79-019-51) and the Old Marlboro High School (Historic Site 79-019-52) from the Inventory of Historic Resources[.] . . .
>
> NOW, THEREFORE, BE IT RESOLVED by the County Council of Prince George's County, Maryland, . . . that in accordance with Sections 27-642 of the Zoning Ordinance, the following Minor Amendment to the [*2010*] *Prince George's County Historic Sites and Districts Plan*, is hereby approved and incorporated as set forth fully within this Resolution[.] . . .
>
> Amend the [*2010*] *Prince George's County Historic Sites and District*[*s*] *Plan* to remove the Old Marlboro Primary School, Historic Site 79-019-51, and the Old Marlboro High School, Historic Site 79-019-52, as described in Attachment A, and incorporated fully herein.

BE IT FURTHER RESOLVED that any proposal for redevelopment of the subject property seek to retain historic building fabric from the two school buildings to the extent practicable and to commemorate the history of the property through interpretive signage or other visual elements; and

BE IT FURTHER RESOLVED that the Dr. William and Sarah Beanes Cemetery (Historic Site 79-019-22) be preserved in place and protected from any redevelopment of the subject property, including through delineation of an appropriate environmental setting[.] . . .

(Emphasis added).

## Legal Proceedings

### A. Circuit Court Proceeding

On December 17, 2019, the Town filed a petition for judicial review of CR-98-2019 in the Circuit Court for Prince George's County. The Town argued that the initiating resolution, CR-72-2019, failed to comply with the dictates of the Prince George's County Code in setting forth the purpose and scope of the proposed minor amendment, and as a result, the Council's decision to adopt the minor amendment in CR-98-2019 was arbitrary and capricious. The Town argued that CR-72-2019, as an initiating resolution, was not a final agency decision and not directly judicially reviewable; therefore, it properly challenged CR-98-2019 by alleging deficiencies in CR-72-2019. The Council responded that CR-72-2019 was a judicially reviewable final agency decision, and because the Town challenged the adoption of the minor amendment solely based on alleged deficiencies in CR-72-2019, the Town waived its challenge by failing to directly appeal CR-72-2019 within thirty days. The Council also argued that it complied with the procedural requirements pursuant to the Prince George's County Code when setting forth the purpose

6

and scope of the minor amendment, and its decision was supported by substantial evidence in the record and was not arbitrary and capricious.

The circuit court did not directly address whether CR-72-2019 was a final agency action that should have been directly challenged by the Town, but ruled in favor of the Council, finding that the decision to adopt the minor amendment was not arbitrary and capricious, but was supported by substantial evidence in the record. Specifically, the circuit court stated:

> An administrative decision is deemed arbitrary and capricious if it is made impulsively, at random, or according to individual preferences rather than motivated by relevance or applicable set of norms. Thus, as long as the decision of the District Council was reasonably or rationally motivated, this Court must affirm its decision, as such decisions cannot be deemed arbitrary or capricious.
>
> The adoption of County Resolution 72-2019, the initiating resolution, and CR-98-2019, the resolution approving the minor amendment, was not impulsive, random, or based on an individual preference, and such adoptions were conducted under lawful and statutory authority. They were subject to public notice and a deliberative process that is required under the law, further noting that substantial evidence test remains the ultimate consideration on judicial review and does not involve reweighing of the evidence that went before the Council. This Council finds the District Court's -- excuse me, the District Council decision was substandard by -- supported by substantial evidence in the record.
>
> ***
>
> For all the reasons I have outlined on the record, this Court is bound by the determination of the Prince George's County Council, having found that it was not arbitrary, capricious, or based on erroneous conclusion of law, and it's [*sic*] decision is hereby affirmed.

7

## B. Opinion of the Court of Special Appeals

The Town appealed the circuit court's ruling to the Court of Special Appeals, which affirmed the circuit court on different grounds in an unreported opinion. *Town of Upper Marlboro*, 2021 WL 4169198, at \*5. The intermediate appellate court held that the Town forfeited its right to appeal any procedural deficiencies in CR-72-2019 when it failed to bring an action within thirty days of its passage pursuant to Maryland Code, Land Use Article ("Land Use") § 22-407(a)(2). *Id.* at \*3–4. The court reasoned, relying on *Colao v. County Council of Prince George's County*, 109 Md. App. 431, 436, 675 A.2d 148, 150 (1996), *aff'd*, 346 Md. 342, 697 A.2d 96 (1997), that although CR-72-2019 and CR-98-2019 were related and concerned the same properties, they were nonetheless "administratively distinct actions of the Council[]" and CR-72-2019 should have been independently appealed as a final agency action. *Town of Upper Marlboro*, 2021 WL 4169198, at \*4. The court held that "[t]he Town cannot circumvent the 30-day appeal requirement by bringing an appeal of CR-72-2019 through CR-98-2019." *Id.*

Because the Court of Special Appeals found that the Town had waived its arguments alleging deficiencies in CR-72-2019, it declined to reach the merits of whether that resolution adequately set forth the purpose and scope of the minor amendment. *Id.* at \*5. The court concluded that because "[t]he Town did not make any argument that CR-98-2019 was arbitrary and capricious independent of the alleged defects in CR-72-2019," the court "need not rule on whether the Council's decision to adopt CR-98-2019 was supported by substantial evidence." *Id.*

8

## I.

### Contentions of the Parties

#### A. Finality of an Agency Action

The Town argues that the Court of Special Appeals erred in determining that CR-72-2019 was a judicially challengeable final agency action. The Town contends that it could not have appealed the passage of CR-72-2019 because the resolution was a non-final action that "contained no binding or regulatory effect," and therefore, the Town could not establish any "aggrievement" to give the Town standing to challenge the resolution under Land Use § 22-407(a)(1). The Town argues that the defect in the initiating resolution, CR-72-2019, was a defect in the procedure for approval of CR-98-2019 and that it properly challenged the passage of CR-98-2019 by alleging a defect in CR-72-2019.

The Council responds that the Court of Special Appeals correctly determined that CR-72-2019 was a final agency action subject to judicial review, and that the Town waived its arguments based on CR-72-2019's alleged deficiencies by not bringing its challenge within thirty days of the resolution's adoption. The Council asserts that the Town can only challenge whether CR-98-2019 was adopted within the boundaries of its statutory authority.

#### B. Purpose and Scope of an Agency Action

The Town argues that the Council did not comply with the procedure set forth in PGCC § 27-642 for adopting minor amendments. Specifically, it contends that CR-72-

2019 did not adequately set forth the purpose and scope of the proposed minor amendment pursuant to PGCC § 27-642(d). The Town asserts that PGCC § 27-642(b) and (c) set forth permissible "purpose[s]" and "scope[s]" for minor amendments that must be included in an initiating resolution. The Town argues that CR-72-2019 did not adequately state or apply any facts that would satisfy those provisions.

The Council responds that this Court need not reach the issue of purpose and scope because the Court of Special Appeals correctly concluded that the Town waived this argument by failing to appeal CR-72-2019 within thirty days of its passage. However, should this Court reach the issue, the Council argues that CR-72-2019 set forth the purpose and scope of the minor amendment pursuant to PGCC § 27-642(d). Contrary to the position of the Town, the Council asserts that PGCC § 27-642(b) does not create a mandatory list of permissible purposes of minor amendments that must be expressly included in a resolution. Even if the statute required express purpose and scope language, the Council argues that the purpose provided in CR-72-2019, "the need to re-evaluate and remove the historic designation" of the two schools, satisfied any statutory requirement. (Emphasis omitted).

The Council likewise asserts that the scope of CR-72-2019 was limited as required by PGCC § 27-642(c) to "specific issues regarding public planning objectives, including public comment on the proposed minor amendment." (Emphasis omitted). The Council

10

argues that the future use of the property is not necessary to discern the purpose and scope of the minor amendment.

## II.

## Standard of Review

### A. Waiver and Finality of an Agency Action

The determination of whether an argument has been waived under a relevant statutory scheme, or whether a particular agency action is final for the purpose of judicial review, is a question of law that this Court reviews *de novo*. *See Arroyo v. Bd. of Educ. of Howard Cty.*, 381 Md. 646, 658, 851 A.2d 576, 583 (2004) (determining whether an administrative decision was final pursuant to a statute); *Wholey v. Sears Roebuck*, 370 Md. 38, 48, 803 A.2d 482, 487 (2002) ("The viability of a legal cause of action is clearly a question of law which, as with all questions of law, this Court shall review *de novo*."); *Toms v. Calvary Assembly of God, Inc.*, 446 Md. 543, 551, 132 A.3d 866, 870–71 (2016) ("As with all questions of law, we review this matter *de novo*.") (quoting *State v. Johnson*, 367 Md. 418, 424, 788 A.2d 628, 631 (2002)).

### B. Purpose and Scope of an Agency Action

The standard of review for an action of an agency such as the District Council depends on whether it is legislative or quasi-judicial in nature. *See Maryland Overpak Corp. v. Mayor & City Council of Balt.*, 395 Md. 16, 33, 909 A.2d 235, 245 (2006). Judicial review of agency actions deemed to be legislative are generally "limited to assessing whether the agency was acting within its legal boundaries[.] . . ." *Bucktail, LLC v. Cty.*

11

*Council of Talbot Cty.*, 352 Md. 530, 543, 723 A.2d 440, 446 (1999) (quoting *Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 224, 334 A.2d 514, 523 (1975)).

By contrast, when the District Council acts in its quasi-judicial capacity, "the courts review the appealed conclusions by determining whether the contested decision was rendered in an illegal, arbitrary, capricious, oppressive or fraudulent manner." *Id.*, 723 A.2d at 446 (1999) (quoting *Linchester Sand & Gravel Corp.*, 274 Md. at 224, 334 A.2d at 523). Quasi-judicial decisions are generally reviewed under the "substantial evidence test" which requires that the "determination of the zoning authority [] be upheld 'if reasoning minds could reasonably reach the conclusion from facts in the record.'" *Cty. Council of Prince George's Cty. v. Zimmer Dev. Co.,* 444 Md. 490, 510, 120 A.3d 677, 688–89 (2015) (quoting *Cremins v. Cty. Comm'rs of Washington Cty.*, 164 Md. App. 426, 438, 883 A.2d 966, 973 (2005)).

## III.

## Analysis

### A. The Town's Arguments Have Not Been Waived Because CR 72-2019 Was Not A Final Appealable Decision.

Section 22-407(a) of the Land Use Article governs the procedure for judicial review of the Prince George's County Council, sitting as the District Council, pursuant to its zoning authority. *See Grant v. Cty. Council of Prince George's Cty.*, 465 Md. 496, 503, 214 A.3d 1098,1102 (2019) (citing Land Use § 22-101(b)). The statute in pertinent part provides:

12

(1) Judicial review of any *final decision* of the district council, including an individual map amendment or a sectional map amendment, may be requested by any person or entity that is aggrieved by the decision of the district council and is:

    (i)    a municipal corporation, governed special taxing district, or person in the county;

    (ii)    a civic or homeowners association representing property owners affected by the final decision;

    (iii)    the owner of the property that is the subject of the decision; or

    (iv)    the applicant.

(2) A petition for judicial review under this subsection shall be filed in the Circuit Court for Prince George's County *within 30 days after service of the final decision* by the district council.

\*\*\*

Land Use § 22-407(a) (emphasis added). At issue is whether CR-72-2019 constitutes a "final decision" within the meaning of Land Use § 22-407(a), so that a petition for judicial review should have been filed within thirty days after service of the decision by the Council.

Land Use § 22-407(a) mandates that only final decisions of the District Council are judicially appealable. The statute comports with the general rule of Maryland administrative law that "an action for judicial review of an administrative order will lie only if the administrative order is final." *Driggs Corp. v. Maryland Aviation Admin.*, 348 Md. 389, 407, 704 A.2d 433, 442 (1998); *see also Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 74–75, 825 A.2d 388, 397 (2003) ("[I]n the absence of a statutory provision expressly authorizing judicial review of interlocutory administrative decisions, and in the

13

absence of an interlocutory administrative decision with immediate legal consequences causing irreparable harm, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts[.]") (cleaned up).

This Court has clarified that "not every administrative order which determines rights and liabilities, or from which legal consequences flow, is final and thus subject to judicial review." *Holiday Spas v. Montgomery Cty. Hum. Rels. Comm'n*, 315 Md. 390, 396, 554 A.2d 1197, 1200 (1989). Instead, "[t]o be 'final,' the order or decision must dispose of the case by deciding all question[s] of law and fact and leave nothing further for the administrative body to decide." *Willis v. Montgomery Cty.*, 415 Md. 523, 535, 3 A.3d 448, 455–56 (2010). In simple terms, this Court has explained "[o]rdinarily an agency order is not final when it is contemplated that there is *more for the agency to do*." *Kim v. Comptroller of Treasury*, 350 Md. 527, 534, 714 A.2d 176, 179 (1998) (emphasis added).

The purpose of the doctrine of finality relates to both judicial efficiency and authority. In *Driggs Corp.*, we explained:

> The salutary purpose of the finality requirement is to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions. Not only would a contrary rule create the real prospect of unnecessary litigation, as a party choosing to seek review of an unfavorable interlocutory order might well, if the party waited to the end, be satisfied with the final administrative decision, but the wholesale exercise of judicial authority over intermediate and partial decisions could raise serious separation of powers concerns.

348 Md. at 407, 704 A.2d at 443; *see also Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island, LLC,* 443 Md. 199, 216, 115 A.3d 634, 644 (2015) ("The doctrines

of exhaustion and finality 'share the common goal of preventing potentially unnecessary and premature disruption by the courts of the activities of administrative agencies.'").[4]

We have consistently applied the rule of finality to land use decisions of local governments. *See, e.g.*, *Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 485, 27 A.3d 143, 149 (2011); *K. Hovnanian*, 443 Md. at 215, 115 A.3d at 643–44; *Smith v.*

---

[4] In addition to arguing that CR-72-2019 did not meet the requirements of finality, the Town argued in its brief that CR-72-2019 was not judicially appealable based on the administrative law doctrine of exhaustion. This argument was addressed and rejected by the Court of Special Appeals. *Town of Upper Marlboro*, 2021 WL 4169198, at \*4 ("The Town does not explain, however, what remedies it was required to pursue and exhaust before seeking judicial review of CR-72-2019."). The doctrine of exhaustion is "related to and somewhat overlaps the finality principle[]" and requires that "administrative remedies must be exhausted before bringing an action in court." *Dorsey*, 375 Md. at 76, 825 A.2d at 397. We have explained that "[t]he doctrines of exhaustion and finality are 'overlapping' principles in that, '[i]f there is no final administrative decision in a case before an administrative agency, there is ordinarily no exhaustion of the administrative remedy.'" *K. Hovnanian's Four Seasons at Kent Island, LLC*, 443 Md. at 216, 115 A.3d at 644 (quoting *Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 485, 27 A.3d 143, 149 (2011)); *Smith v. Cty. Comm'rs of Kent Cty.*, 418 Md. 692, 712 n.20, 18 A.3d 16, 28 n.20 (2011) ("It may be said fairly that when a litigant fails to exhaust his or her administrative remedies, he or she seeks judicial review of an agency action that is not 'final.'").

Adopting the reasoning of *K. Hovanian*, we conclude that the Town's arguments of finality and exhaustion overlap. The Town had not exhausted all of its administrative remedies following the passage of CR-72-2019 because there was an opportunity to oppose publicly the enactment of the minor amendment. The opportunity to petition the Council to oppose enactment of the minor amendment provides an identical rationale for why CR-72-2019 was not final: the Council could have been swayed by public opposition from the Town, and other interested parties, and could have decided to table the minor amendment. Otherwise, "courts would be performing the function that the legislature specified be done by the administrative agency[, and] courts might be called on to decide issues that would never arise if the prescribed administrative remedies were followed[.]" *Prince George's Cty. v. Ray's Used Cars*, 398 Md. 632, 650, 922 A.2d 495, 505 (2007) (quoting *Gingell v. Bd. of Cty. Comm'rs for Prince George's Cty.*, 249 Md. 374, 377, 239 A.3d 903, 905 (1968)); *see also infra* Part III.B.

*Cty. Comm'rs of Kent Cty.*, 418 Md. 692, 712, 18 A.3d 16, 28 (2011); *Dorsey*, 375 Md. at

75, 825 A.2d at 396; *Prince George's Cty. v. Blumberg*, 288 Md. 275, 295, 418 A.2d 1155,

1166 (1980); *see also American Wild Horse Campaign v. Bernhardt*, 442 F.Supp. 3d 127,

150 (2020) (observing that the rule of finality generally applies to land use plans).

Applying the finality standard expressed above, we hold that CR-72-2019 was not

a final agency action subject to judicial review. CR-72-2019 was passed as an initiating

resolution[5] pursuant to PGCC § 27-642(a), which provides:

> Minor amendments of approved master, sector, functional plans and/or associated Development District Overlay Zones may be initiated by Resolution of the District Council, or by the Planning Board upon approval by Resolution of the District Council. At the time of initiation, a joint public hearing date shall be scheduled to occur within 60 days, in accordance with the notice requirements set forth in Sections 27-644 (b)(2)(A) through Section 27-644 (b)(2)(D) of this Subtitle.

The title of CR-72-2019 as an *initiating* resolution provides the first indication that there

was more work for the Council to do before enacting the minor amendment. In

*Renaissance Centro*, we determined that a "straw vote" was not a final administrative

decision "in light of the Board's planned action to convene later and re-vote." 421 Md. at

490–91, 27 A.3d at 152–53. Similar to a "straw vote," which by definition is preliminary

and presages a subsequent final vote,[6] an "initiating" resolution represents the start of a

---

[5] Section 1017(c) of the Prince George's County Charter defines "resolution" as "a measure adopted by the Council having the force and effect of law *but of a temporary or administrative character*." (Emphasis added).

[6] According to Black's Law Dictionary (11th ed. 2019), a "straw poll"—another
(continued . . .)

process and implies subsequent action. *See Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S. Ct. 1154, 1168 (1997) ("for agency action to be 'final' . . . the action *must mark the 'consummation' of the agency's decision*[-]*making process*[.]") (citation omitted) (emphasis added). The plain text of PGCC § 27-642(a) supports this interpretation by requiring action by the Council *after* the passage of the initiating resolution: "Minor amendments . . . may be *initiated by Resolution* of the District Council[.] . . . *At the time of initiation*, a joint public hearing date shall be scheduled to occur within 60 days[.] . . ." (Emphasis added).

The substance of CR-72-2019 made no determination of whether to adopt the minor amendment and expressly left for the Council "more . . . to do[,]" *Kim*, 350 Md. at 534, 714 A.2d at 179 (citation omitted). In *Kim*, this Court found that a Tax Court ruling from the bench was not "final" because "more remained for the Tax Court to do, such as filing a written order and mailing it to the parties." *Id.*, 714 A.2d at 179. Similar to *Kim*, the Council had at least two remaining steps to complete before the minor amendment could become final: hosting a joint public hearing on the minor amendment within sixty days of the initiating resolution and voting to approve, approve with revisions, or disapprove the proposed minor amendment. PGCC § 27-642(a) & (f).

---

(. . . continued)
name for a "straw vote"—is a "nonbinding vote, taken as a way of informally gauging support or opposition but usu. without a formal motion or debate; esp., an informal test of several people's opinions to see what the general feeling about something is."

The District Council and Planning Board took further action by holding additional public work-sessions on the testimony from the joint public hearing and recommendations regarding the minor amendment. Rather than "leav[ing] nothing further for the administrative body to decide," *Willis*, 415 Md. at 535, 3 A.3d at 455–56, regarding whether to adopt the minor amendment, CR-72-2019 initiated the process for deciding whether to adopt the minor amendment. The decision to adopt the minor amendment was expressly left for subsequent council action, subject to community input and public response. Considering the foregoing, our precedents on the doctrine of finality require a determination that CR-72-2019 was not a judicially reviewable final agency action.

Our conclusion is bolstered when we consider CR-72-2019 in light of the purposes of the doctrine of finality to avoid unnecessary litigation and overreaching of the courts into the administrative process. *See Driggs Corp.*, 348 Md. at 407, 704 A.2d at 443. As previously discussed, CR-72-2019 did not decide whether to adopt the minor amendment. The Council could have decided, after the joint public hearing and public work-sessions, not to adopt the minor amendment. The Town presumably would have been satisfied with that decision and would not have sought judicial recourse. Requiring the Town to appeal CR-72-2019 before the Town knew whether it would be satisfied with the ultimate decision of the Council risks unnecessary litigation. *Soley v. State Comm'n on Hum. Rel.*, 277 Md. 521, 526, 356 A.2d 254, 257 (1976) ("[T]o permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the efficiency [of the administrative process, and] the courts might be called upon to decide

18

issues *which perhaps would never arise* [.] . . .") (emphasis added). Furthermore, permitting judicial review of an initiating resolution such as CR-72-2019 would require the courts to insert themselves into the administrative process before it has a chance to fully develop. This "exercise of judicial authority over intermediate and partial decisions could raise serious separation of powers concerns." *Driggs Corp.*, 348 Md. at 407, 704 A.2d at 443.

The holding of *Colao*, 109 Md. App. 431, 675 A.2d 148 (1996), does not mandate a different result. In *Colao*, the petitioners sought to appeal the approval of two related zoning ordinances pertaining to two related parcels of land, but inadvertently left one of the two ordinances out of their appeal. *Id.* at 440, 675 A.2d at 153. The Court of Special Appeals determined that the petitioners' challenge to one of the ordinances was not sufficient to challenge the related ordinance. *Id.* at 449–50, 675 A.2d at 157–58. The intermediate appellate court explained that even though the ordinances concerned two related parcels, the "Council's action approving [one ordinance] was 'an order or action of an administrative agency' that was administratively distinct from its action approving [the other ordinance]." *Id.* at 450, 675 A.2d at 158. The approval of the two ordinances in *Colao* were two administratively distinct *final* agency actions, involving two *separate* parcels of land. *Id.* at 450–51, 675 A.2d at 157–58.

The relationship between CR-72-2019 and CR-98-2019 is distinguishable from the relationship between the ordinances at issue in *Colao*. Unlike the ordinances in *Colao*, CR-72-2019 and CR-98-2019 pertain to the same properties and address the same issue,

19

namely, whether those properties should lose their protected historic status. As discussed in detail above, CR-72-2019 was an initiating resolution that by statute *began* a process culminating in the adoption of the minor amendment in CR-98-2019. CR-72-2019 and CR-98-2019 were not "administratively distinct[,]" but two inextricably linked stages of a single administrative process. *Town of Upper Marlboro*, 2021 WL 4169198, at \*4.

Assuming *arguendo* that CR-72-2019 and CR-98-2019 were administratively distinct actions, we would still hold that CR-72-2019 was not a final agency action subject to judicial review. A determination that certain agency actions are administratively distinct does not mean, as a matter of law, that they are final for the purpose of review. A "distinct" administrative decision must still resolve "all question[s] of law and fact and leave nothing further for the administrative body to decide." *Willis*, 415 Md. at 535, 3 A.3d at 455–56; *see also Dorsey*, 375 Md. at 75, 825 A.2d at 397 (noting that a decision is not final "simply [because it was made] by a Board or unit at the top of the administrative hierarchy").

CR-72-2019 was not a judicially reviewable final agency action. Therefore, the Town was not required to file a petition for judicial review within thirty days of its passage to preserve its right to challenge the purpose and scope of CR-72-2019.

**B. CR-98-2019 Was a Final Agency Action Subject to Judicial Review and the Town Was Permitted to Challenge CR-98-2019 by Alleging Deficiencies in CR-72-2019.**

Unlike CR-72-2019, however, CR-98-2019 was a judicially reviewable final agency action. The parties do not argue otherwise. CR-98-2019 adopted the minor amendment and left nothing more for the Council or Planning Board to decide regarding the matter.

20

*See Willis*, 415 Md. at 535, 3 A.3d at 455–56 ("To be 'final,' the order or decision must dispose of the case by deciding all question[s] of law and fact and leave nothing further for the administrative body to decide.").  Unlike with the passage of CR-72-2019, when CR-98-2019 was passed, the Town became certain of the Council's decision regarding the historically protected status of the schools, and challenging CR-98-2019 would not have resulted in piecemeal or unnecessary litigation.  As CR-98-2019 was a judicially appealable final agency action by the Council, the Town correctly asserted its judicial challenge to the resolution's passage within thirty days pursuant to Land Use Article § 22-407(a).

Prince George's County Code permitted the Town to challenge the passage of CR-98-2019 by alleging procedural deficiencies in CR-72-2019.  PGCC § 27-642 outlines the process for adopting a minor amendment to an approved zoning plan:

> (a) *Minor amendments* of approved master, sector, functional plans and/or associated Development District Overlay Zones *may be initiated by Resolution of the District Council*, or by the Planning Board upon approval by Resolution of the District Council.  At the time of initiation, a joint public hearing date shall be scheduled to occur within 60 days, in accordance with the notice requirements set forth in Sections 27-644(b)(2)(A) through Section 27-644(b)(2)(D) of this Subtitle.
>
> (b) The *minor amendment process* may be utilized to:
>
>> (1) advance the goals of an approved comprehensive plan, functional plan, or development district plan; or
>>
>> (2) safeguard the public safety health and welfare of citizens and residents within the plan area boundaries.
>
> (c) The scope of the minor amendment shall be limited to:
>
>> (1) a geographic area which is not more than 50% of the underlying plan area, but not limited to a single property or property owner;

21

(2) limited to specific issues regarding public planning objectives; or

(3) for the purpose of correcting errors in the text or maps in the applicable plan.

(4) Notwithstanding subsections (1) through (3), herein, the minor amendment process shall not be utilized for any amendment which would require major transportation analysis and/or modeling, revised water and sewer classifications, or any Adequate Public Facilities analysis.

(d) The Resolution initiating a minor amendment shall set forth the purpose and scope of the proposed amendment, and shall state the date of the joint public hearing on the proposed amendment.

(e) The Planning Board shall transmit a draft of the proposed amendment, a technical staff report analyzing the amendment, and the Planning Board's recommendation on the Development District Overlay Zone amendment and/or the Planning Board's adoption of the plan amendment within 30 days of the date of the joint public hearing.

(f) Within 90 days of receipt of the Planning Board's recommendation, the District Council shall approve, approve with revisions, or disapprove the proposed minor amendment.

(Emphasis added).

PGCC § 27-642 establishes an administrative process for adopting a minor amendment. The process begins with an initiating resolution, such as CR-72-2019. PGCC § 27-642(a). Next, the public must be given an opportunity to comment on the Council's proposed minor amendment in a public hearing. PGCC § 27-642(a) & (d). The proposed amendment is concurrently reviewed by the Planning Board and its technical staff. PGCC § 27-642(e). Finally, the Council must determine whether to adopt the proposed minor amendment by passing an enacting resolution, such as CR-98-2019. PGCC § 27-642(f).

22

CR-72-2019 and CR-98-2019 bookend the process for passing a minor amendment. The passage of CR-72-2019 was a necessary element of the statutorily mandated process that permitted the Council to adopt the minor amendment in CR-98-2019. We conclude that the Town could challenge the adoption of the minor amendment in CR-98-2019 by alleging deficiencies in CR-72-2019.

Although we find that the Town's challenge to CR-98-2019 was both timely and cognizable, for the reasons explained below, the Town does not prevail on the merits of its procedural deficiency claim because the District Council complied with the statutory requirements for minor amendments under the Prince George's County Code.

## C. CR-72-2019 Was Not Procedurally Deficient Because the Resolution Adequately Provided the Purpose and Scope of the Minor Amendment Pursuant PGCC § 27-642.

As a threshold issue, we must determine whether the Council acted in a legislative or quasi-judicial capacity when enacting CR-72-2019. If the Council acted in a legislative capacity, we limit our review as to whether the Council acted within its legal boundaries. *Linchester*, 274 Md. at 224, 334 A.2d at 523; *Gisriel v. Ocean City Bd. of Supervisors of Elections*, 345 Md. 477, 490 n.12, 693 A.2d 757, 763 n.12 (1997) ("Legislative or quasi-legislative decisions of local legislative bodies or administrative agencies are, of course, not subject to ordinary judicial review; instead, they are subject to very limited review by the courts."). Conversely, if the Council acted in a quasi-judicial capacity, we apply the substantial evidence test to determine whether a reasoning mind would reach the decision of the Council based on facts in the record. *Bucktail, LLC*, 352 Md. at 552, 723 A.2d at

23

450. The line separating a legislative and quasi-judicial action often proves elusive. In *Bucktail LLC*, we explained the distinction between legislative and quasi-judicial actions as follows:

> The determination of whether a local zoning authority is acting in an adjudicative or legislative manner is dependent upon the nature of the particular act in which it is engaged. This determination is not based on whether the zoning decision adversely affects an individual piece of property but whether the decision itself is made on individual or general grounds.
>
> The difference between adjudicative and legislative facts is not easily drawn; . . . adjudicative facts are facts about the parties and their activities, businesses and properties. They usually answer the questions of who did what, where, when, how, why, with what motive or intent, while legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion. The difference, broadly speaking, involves whether the decision is to be made on individual or general grounds.

352 Md. at 545, 723 A.2d at 447 (internal citations and quotations omitted).

We hold the Council's decision to adopt the minor amendment to remove Old Marlboro Primary School and Old Marlboro High School from the *2010 Prince George's County Historic Sites and Districts Plan* through the passage of CR-72-2019 and CR-98-2019 was a legislative action. The Town conceded at oral argument that the Council was acting in its legislative capacity when adopting the minor amendment.[7] Oral Argument at 13:45, *Town of Upper Marlboro v. Prince George's Cty. Council*, No. 55, September Term, 2021 (Md. 2022), https://www.courts.state.md.us/sites/default/files/import/coappeals/media/2021/coa20220

---

[7] We express no opinion as to whether we would have reached the same conclusion without the concession of the Town.

24

[510caseno55.mp4](https://...), archived at [https://perma.cc/D946-KZQL](https://perma.cc/D946-KZQL) ("[T]here's two ways to designate historic properties in Prince George's County. One [] is quasi-judicial under Article 29 of the County Code, and the[] other is a legislative act. *This believe it or not, even though it is [confined] to one parcel, is a legislative act*.") (emphasis added). The decision, while involving one parcel, appeared discretionary, made on general policy grounds pursuant to a legislative process, rather than made by adjudicating certain facts with respect to the properties. *See Bucktail, LLC*, 352 Md. at 548, 723 A.2d at 448 (finding a zoning process to be adjudicative because the zoning process involved "applying the Zoning Ordinance standards to the particular facts of Bucktail's property").

Our review is therefore limited to determining whether the Council acted within its legal boundaries when it adopted the minor amendment CR-72-2019.[8] *See Bucktail, LLC*, 352 Md. at 543, 723 A.2d at 446. Whether the Council acted within its legal boundaries involves a determination of whether the Town complied with statutory procedure for adopting minor amendments to zoning plans pursuant to PGCC § 27-642. Specifically, we must determine whether the initiating resolution adequately set forth a purpose and scope for the proposed minor amendment. PGCC § 27-642(d).

When interpreting a statute, this Court begins by:

looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is

---

[8] The circuit court did not determine whether the Council's actions relative to CR-98-2019 were legislative or quasi-judicial but presumed that the standard of review was the substantial evidence test relative to the Council's actions. Although the circuit court applied the substantial evidence test, it reached the correct conclusion regarding the merits of the Town's claims.

rendered surplusage, superfluous, meaningless or nugatory.  If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends.

*Ray v. State*, 410 Md. 384, 404–05, 978 A.2d 736, 747–48 (2009) (cleaned up).  In doing so, we "do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *State v. Bey*, 452 Md. 255, 266, 156 A.3d 873, 878 (2017).  Instead, "plain language must be viewed within the context of the statutory scheme to which it belongs[,]" and we "presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Id.*, 156 A.3d at 878–79.

PGCC § 27-642(b)-(d) outlines the purpose and scope for the minor amendment process:

(b) The *minor amendment process* may be utilized to:

(1) advance the goals of an approved comprehensive plan, functional plan, or development district plan; or

(2) safeguard the public safety health and welfare of citizens and residents within the plan area boundaries.

(c) The *scope of the minor amendment* shall be limited to:

(1) a geographic area which is not more than 50% of the underlying plan area, but not limited to a single property or property owner;

(2) limited to specific issues regarding public planning objectives; or

(3) for the purpose of correcting errors in the text or maps in the applicable plan.

26

(4) Notwithstanding subsections (1) through (3), herein, the minor amendment process shall not be utilized for any amendment which would require major transportation analysis and/or modeling, revised water and sewer classifications, or any Adequate Public Facilities analysis.

(d) The Resolution *initiating a minor amendment shall set forth the purpose and scope of the proposed amendment*, and shall state the date of the joint public hearing on the proposed amendment.

(Emphasis added).

While an initiating resolution must "set forth the purpose" of the proposed minor amendment, PGCC § 27-642(d), the statute does not prescribe a particular purpose. The Town argues that a proposed minor amendment must adopt either of the two purposes provided in PGCC § 27-642(b). Contrary to the Town's assertions, PGCC § 27-642(b) does not require a minor amendment to fulfill either purpose. The subsection states: "The minor amendment process *may* be utilized to . . ." PGCC § 27-642(b) (emphasis added). According to the rules of construction pursuant to PGCC § 1-101(a)(16), the term "may" constitutes "permissive and discretionary[]" language. *See Bd. of Phys. Quality Assurance v. Mullan*, 381 Md. 157, 166, 848 A.2d 642, 648 (2004) ("The word 'may' is generally considered to be permissive, as opposed to mandatory language."). The plain language of PGCC § 27-642(b) does not require a minor amendment to either "(1) advance the goals of an approved comprehensive plan, functional plan, or development district plan; or (2)

27

safeguard the public safety health and welfare of citizens and residents within the plan area boundaries."[9]

In contrast, PGCC § 27-642(c) states that "[t]he scope of the minor amendment shall be limited to . . ." certain delineated limitations that are not relevant to the instant case. The Prince George's County Code defines "shall" as "mandatory[.]" PGCC § 1-101(a)(30); *see also State v. Rice*, 447 Md. 594, 624, 136 A.3d 720, 738 (2016) ("We have held that the use of the word 'shall' is treated as mandatory unless 'the context in which it is used indicates otherwise.'") (quoting *Resetar v. State Bd. of Educ.*, 284 Md. 537, 547, 399 A.2d 225, 230 (1979)). Thus, unlike subsection (b), subsection (c) requires the scope of a minor amendment to be limited to its four enumerated provisions.

CR-72-2019 adequately "set forth the purpose" of the minor amendment as required by PGCC § 27-642(d). In the preamble, CR-72-2019 provided that "District Council finds that there is a need to reevaluate the designation of [Old Marlboro Primary School and Old Marlboro High School] for removal from the [*2010*] *Prince George's County Historic Sites and Districts Plan*[.]" The initiating resolution then stated its purpose for the minor amendment would be "*to remove* the Old Marlboro Primary School[] . . . and the Old Marlboro High School" from the *2010 Prince George's County Historic Sites and Districts Plan.* (Emphasis added).

---

[9] We do not need to decide the full range of permissible purposes pursuant to PGCC § 27-642(b) & (d). Our task is limited to whether the Council exceeded the legal boundaries of the statute by proposing a minor amendment for the purpose of removing the historical designation of two schoolhouses.

28

Furthermore, PGCC § 27-642(d) did not require CR-72-2019 to specify either why the Council sought to remove the historic designation of the two schoolhouses, or how the schoolhouses would be utilized in the future. The Town provides no statutory support for the proposition that PGCC § 27-642(b) & (d) demands particular factual detail regarding the "purpose" of a proposed minor amendment. By stating that the proposed minor amendment was to remove the Old Marlboro Primary School and Old Marlboro High School from the 2010 *Prince George's County Historic Sites and Districts Plan*, CR-72-2019 adequately set forth the purpose of the minor amendment, as required under PGCC § 27-642(d).

CR-72-2019 likewise adequately "set forth . . . the scope" of the minor amendment pursuant to PGCC § 27-642(c) and (d). CR-72-2019 provided:

> [T]he Council finds that the proposed minor amendment is plainly authorized pursuant to Section 27-642, because the proposed amendment: (1) is limited to specific issues regarding public planning objectives; and (2) does not constitute an amendment which would require major transportation analysis and/or modeling, revised water and sewer classifications, and Adequate Public Facilities analysis[.]

CR-72-2019 complied with the circumscribed "scope" set forth in PGCC § 27-642(c) because it expressly stated that its purpose was limited "to specific issues regarding public planning objectives[.]" The Town provides no statutory support for its assertion that CR-72-2019 required any specific factual details regarding the "specific issues regarding public planning objectives[.]" *See* PGCC § 27-642(c)(2). Even if it did, CR-72-2019's statement that the minor amendment concerned only the historic designation status of the two schools would be sufficient to demonstrate that the scope of the minor amendment was

29

appropriately limited under PGCC § 27-642(c)(2). We therefore find that CR-72-2019 adequately set forth the "scope" of the minor amendment as required by PGCC § 27-642(d).

## CONCLUSION

The Court of Special Appeals erred in determining that CR-72-2019 was a final agency action subject to judicial review, because the resolution merely initiated the process for determining whether to remove the historic designation of the two schoolhouses. The Council made a final agency action through the passage of CR-98-2019. As such, the Town did not waive its challenge to CR-98-2019, based on alleged deficiencies in CR-72-2019, by failing to appeal CR-72-2019 within thirty days of its passage. We do not agree with the Town, however, that CR-72-2019 was procedurally deficient. We conclude that CR-72-2019 satisfied the statutory requirements set forth in PGCC § 27-642 for an initiating resolution for a minor amendment. We therefore affirm the judgment of the Court of Special Appeals on alternative grounds.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

30